## DuMont Pharmacal Company, Inc., v. Latinsky

*Howard Wellmer*, for plaintiffs.

*P. Goldberg* and *L. H. Sigal*, for defendants.

FLOOD, P. J., October 26, 1960. — 1. Plaintiff, DuMont Pharmacal Co., Inc., is a corporation engaged in the business of manufacturing drugs. Defendant Latinsky was at one time a part owner of plaintiff DuMont and one of its manufacturing chemists, but eventually all the stock of DuMont came into the hands of Harry Shane, and DuMont then made a three-year contract with Latinsky, under which the latter was to serve as its production manager and manufacturing chemist as well as salesman. The agreement contained a restrictive covenant against Latinsky's entering a manufacturing or wholesale drug business in competi-

tion with DuMont within the continental United States for a period of two years after termination of his employment. The contract also contained the following clause:

"In the event that Shane shall cease to be a Majority Stockholder of DuMont, Latinsky shall have the election of terminating his contract of employment, and is hereby released from . . . the provisions of the restrictive covenants herein above set forth. . . ."

Later Shane sold all of his stock to his brother, Charles Shane, who now controls DuMont. Still later, Latinsky gave notice that he was terminating his contract of employment but would remain long enough to train his successor. About two years thereafter, he left the employment of DuMont and formed defendant Pace Pharmacal Co., Inc., which is now alleged to be in competition with DuMont. DuMont seeks an injunction against this competition.

The last quoted phrase of the contract gave Latinsky the election to terminate his contract of employment when Harry Shane sold control of DuMont to Charles. Charles' defense that Latinsky waited too long is not a good one. The termination of his employment occurred more than two years after he gave notice of termination, but it appears that his employment, after notice given, was not under the written contract. Moreover, it may be that, without any election or other action by Latinsky, he was automatically released from the restrictive covenant upon the sale of the stock by Harry to Charles Shane. Therefore, there is no right against him under the contract, although the question remains whether plaintiffs have any rights against him or Pace Pharmacal Co., Inc., at common law.

2. Defendant Rosen was employed by Bond Drug Company as a salesman and administrative assistant to the president for a year at a salary of $85 per week,

plus a bonus of one-tenth of one percent of the net sales of the company. The contract contained a restrictive covenant not to compete for three years after the termination of the employment. However, three months after the execution of the contract, he was offered a sales job but refused it. After several other conversations, he agreed to take it at a compensation of $45 a week, plus commission. This was either a novation or a failure of consideration as to the restrictive covenant in the earlier contract. In either case we cannot see that Rosen was thereafter bound by the contract.

3. Defendant Gochin had been employed by Bond Drug Company as a salesman for five years when he signed an employment contract with a restrictive covenant against competing with Bond for one year within a radius of 60 miles of Philadelphia. This contract was for employment for a period of a year and thereafter from year to year with a 60-day notice of termination by either party. It also contained a clause (paragraph 6) giving the corporation the right to discharge defendant at any time when it should appear "at the sole discretion of the corporation" that the employe has been dishonest, incompetent, inefficient, negligent, or unfaithful to the corporation's interest "or otherwise unfit for the service for which he is employed." It seems obvious if the corporation had the right to discharge Gochin at its sole discretion when it appears that he is "unfit for the service for which he is employed," this is merely a hiring at will. This existed before the contract, and constitutes no sufficient consideration for the restrictive covenant.

There is no ground for the issuance of an injunction against competition against any of defendants under these contracts.

4. Plaintiffs also claim certain common law rights against defendants and argue that they should at least

be enjoined from soliciting or selling to plaintiffs' customers.

The fiduciary relationship existing between agent and principal cited by plaintiff (Restatement, Agency 2d, §§15, 39), does not survive the agency relationship except to a very limited extent. In the absence of a valid contract the agent, after he leaves his principal's employment, has no duty not to compete with the principal: Restatement, Agency 2d, §396(a).. He does, however, have the duty not to disclose or use on his own account or on the account of others in competition with the former principal "trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty. The agent is entitled to use general information concerning the method of business of the principal and the names of the customers retained in his memory, if not acquired in violation of his duty as agent."

Plaintiffs suggest that the Pennsylvania cases impose a higher duty, but we do not think they do. Plaintiffs rely upon Morgan's Home Equipment Corp. v. Martucci, 390 Pa. 618 (1957). This does not go so far as to say that the former employe may not compete by trying to sell to his former employer's customers when there is no appropriation of a written list, except in the case where the list of customers which is retained in the memory is in the nature of a trade secret. The court in the Morgan case held that the customer data used by defendant was a trade secret for which the employer was entitled to protection. But the court says that such secret must be the particular secrets of the complaining employer, not one of the general secrets of the trade in which he is engaged. The opinion in the Morgan case stated that "there is no dispute that the customer data of the plaintiff company was both confidential and highly valuable, and the court

en banc so found" and held that in such circumstances whether the information was embodied in written lists and committed to memory was of no significance. We have no such situation here. Charles Shane, the owner of plaintiff company, gave no testimony that this customer data was confidential or valuable. Such information as we have on this subject was given by defendants upon cross-examination and they said that a list of druggists containing these names could be obtained from any telephone book, that none of the customers in question purchased exclusively from plaintiff. There was nothing which would constitute proof that this was "a highly valuable list" in the sense of the Morgan case and we do not see that in the light of the language in the Morgan opinion, we can assume that this was a trade secret in the absence of proof.

We think that what plaintiffs were trying to prove was simply that defendants were competing with them unfairly. Since defendants have the right to solicit customers of their former employers whose names they retain in their memory provided the list of those customers is not a trade secret, we think solicitation, in the absence of proof that the customers constituted a "confidential and highly valuable list" cannot be considered as unfair competition. Therefore, upon plaintiff's failure to offer any proof that the customer data used by the various defendants was highly valuable or was a particular secret of the complaining employer, we do not believe that the preliminary injunction should be granted.

Plaintiffs have not, in our opinion, made out a case entitling them to a preliminary injunction, and it appears to us that unless both their pleading and evidence is considerably strengthened upon the final hearing, they will show no cause of action.

The application for preliminary injunction is denied.